

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED 6/23/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
NEW YORK CITY DISTRICT COUNSEL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND; UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS OF
AMERICA FUND and THE NEW YORK CITY AND
VICINITY CARPENTERS LABOR MANAGEMENT
CORPORATION, by MICHAEL J. FORDE, and
PAUL O'BRIEN, as TRUSTEES, AND MICHAEL J.
FORDE AS EXECUTIVE SECRETARY-TREASURER,
DISTRICT COUNCIL FOR NEW YORK CITY AND
VICINITY, UNITED BROTHREHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

**MEMORANDUM and**
**ORDER**

08 Civ. 3735
(NRB)

                    Plaintiffs,

        - against -

S&G FLOORING, INC.,

                    Defendant.
------------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Presently before the Court is plaintiffs' motion to
confirm an arbitration award issued October 4, 2007 (the
"Arbitration Award").   For the reasons set forth below, we
grant plaintiffs' motion.

MICROFILMED   JUN 2 4 2009 -9 🅰 AM

1

## BACKGROUND

In January 2005, defendant S & G Flooring ("SGF") was engaged in work on a flooring project at 1400 Broadway in New York City. Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Confirm the Arbitration Award ("Def.'s Memo.") at 1. SGF was using both union and non-union laborers to complete the project. Id. On January 19, 2005, Mike Zemsky, a business agent affiliated with plaintiffs, appeared at the job site. Id. at 1-2; Plaintiffs' Memorandum of Law in Further Support of Motion to Confirm Arbitration Award ("Pl.'s Reply") at 1. Defendant alleges that, shortly after arrival, Zemsky ordered all union workers to stop working and then told Steve Drago, a principal of SGF, that SGF "could not continue to perform its job at the 1400 Broadway project unless [SGF] used Union workers, signed the Union's collective bargaining agreement, and became bonded." Def.'s Memo. at 2. Plaintiffs deny that Zemsky threatened Drago with a work stoppage. Pl.'s Reply at 2.

Both parties agree that Zemsky and Drago proceeded to discuss entering into a collective bargaining agreement (the "CBA"). Def.'s Memo. at 2; Pl.'s Reply at 2. After these discussions, Drago contacted a representative of the property manager of 1400 Broadway, who informed Drago that

2

"he did not want any work stoppages at the building" and that if there was a work stoppage, SGF "would be removed from the job." Declaration of Steven Drago ("Drago Decl.") ¶ 10. According to defendant, Drago then signed the CBA "without reviewing it or having an attorney review it."[1] Def.'s Memo. at 2.

SGF maintains that, during these discussions, Zemsky told Drago that the agreement would only cover employees working on the 1400 Broadway project. Id. Plaintiffs deny that Zemsky made this representation, and cite page three of the CBA, which includes no such limitation and states that it covers all work done by employees within the 12 New York counties it lists. Pl.'s Reply at 2; Pl.'s Ex. 1 at 3.

In July 2005, months after Drago signed the CBA, plaintiffs requested, and defendant agreed to, an audit of defendant's books for the period of January 19 to June 30, 2005, pursuant to the CBA. Affidavit of Auditor Roger Chu ("Chu Aff.") ¶¶ 2, 3. On August 9, 2005, an auditor from the firm of Abrams, Herde & Merkel LLP executed the audit of SGF's books. Chu Aff. ¶ 3; Chu Aff. Ex. A at 2.

---

[1] While defendant does not state how long Drago took to sign the CBA after receiving it, it appears that he signed it the same day and delivered it to plaintiffs the next day. Pl.'s Ex. 1 at 50; Pl.'s Reply at 2.

On September 13, 2007, plaintiffs filed a Notice of Intention to Arbitrate, which alleged that defendant owed plaintiffs fringe benefit contributions under the CBA. Def.'s Memo. at 4; Affidavit of Steven Kasarda ("Kasarda Aff.") Ex. A.   SGF "did not appear for the arbitration because the CBA is unenforceable." Def.'s Memo. at 4.   On October 4, 2009, the arbitrator issued an award of $157,091.55 in favor of plaintiffs. Id.   Presently before the Court is plaintiffs' motion to confirm this arbitration award.

## DISCUSSION

Defendant argues that the CBA -- and, accordingly, the arbitration award -- is unenforceable because SGF entered into the CBA as a result of economic duress or, alternatively, as a result of fraud in the execution. Def.'s Memo. at 1.   Plaintiffs argue that SGF is estopped from asserting that the CBA is unenforceable either because (1) SGF failed to file an application to stay the arbitration proceedings under the New York Civil Practice Law and Rules (CPLR) section 7503(b) or (2) SGF did not move to vacate the arbitral award within the three month statute of limitations that applies to actions brought under section 301(a) of the Labor Management Relations Act,

1947 (Taft-Hartley Act), 29 U.S.C. § 185.  Pl.'s Reply at
5-9.

In actions filed under section 301 of the LMRA, such
as this one, while the substantive law to be applied is
federal common law, Textile Workers Union v. Lincoln Mills
of Ala., 353 U.S. 448, 450-51 (1957), courts have
repeatedly looked to the law of the state where the events
took place to create federal law.[2]  See, e.g., Local 802,
Assoc. Musicians of Greater New York v. The Parker Meridien
Hotel, 145 F.3d 85, 88 (2d Cir. 1998) (using the three
month statute of limitations period from CPLR 7511(a),
rather than the FAA, where section 301 cases are silent on
a limitations period); Lerner v. Amalgamated Clothing and
Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991)
(applying New York case law in holding that an employee who
signed a collective bargaining agreement was not personally
liable under the agreement).

With respect to plaintiffs' argument that defendant
did not apply to stay the arbitration in a timely manner,
the CPLR states that "a party may serve upon another party
. . . a notice of intention to arbitrate . . . stating that

---

[2]    This dispute is not governed by the Federal Arbitration Act
("FAA"), 9 U.S.C. § 1 et seq., because the FAA does not apply "to
contracts of employment of seamen, railroad employees, or any other
class of workers  engaged in foreign or interstate commerce."  9 U.S.C.
§ 1; see, e.g., United Paperworkers Int'l Union, AFL-CIO v. Misco,
Inc., 484 U.S. 29, 40 n.9 (1987) (stating that the FAA does not apply
to labor arbitration cases but looking to the Act for guidance).

unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made." N.Y. C.P.L.R. § 7503(c). On September 13, 2007, plaintiffs served defendant with a Notice of Intention to Arbitrate, which stated that "[p]ursuant to CPLR 7503(c), unless you apply within twenty (20) days after the service of this notice for a stay of the arbitration, you will thereafter be precluded from objecting that a valid agreement was not made." Kasarda Aff. Ex. A at 2. Despite being put on notice of the timeline provided by section 7503(c), defendant did not apply for a stay of the arbitration proceedings. Def.'s Memo. at 4.

Plaintiffs further argue that SGF may not at this stage raise as an affirmative defense the contention that the CBA is unenforceable because it did not do so within ninety days of delivery of the arbitral award. Pl.'s Reply at 8. We agree.

The Second Circuit has held that the statute of limitations contained in CPLR § 7511(a) applies in the context of the "enforcement of arbitration awards pursuant to a collective bargaining agreement." Local 802, Assoc. Musicians of Greater New York, 145 F.3d at 88. CPLR 7511(a) states that "An application to vacate or modify an

6

award may be made by a party within ninety days after its delivery to him." N.Y. C.P.L.R. § 7511(a). In Local 802, the Court expressly considered whether a party should be permitted to assert unenforceability as an affirmative defense after the ninety day period from CPLR § 7511(a) had elapsed. In holding that the defendant was in fact barred from doing so, the Court stated that permitting the defendant to raise unenforceability at a late stage would "conflict[] with the 'underlying purposes of the arbitration mechanism.'" Id. at 89 (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)). The Local 802 Court explained in greater depth:

> The Florasynth Court reasoned: "The role of arbitration as a mechanism for speedy dispute resolution disfavors delayed challenges to the validity of an award. Thus, when a party to an arbitration believes that he has been prejudiced in the proceedings by behavior that the [FAA] condemns he must bring a motion to vacate within the allotted time. When the three month limitations period has run without vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding." Id. at 177 (citation omitted). This reasoning applies to arbitration of LMRA labor disputes just as surely as it does to arbitration under the FAA, and [defendant] fails to articulate a reason why it needed more than the ninety days provided in CPLR 7511(a) to challenge the award.

Local 802, Assoc. Musicians of Greater New York, 145 F.3d
at 89.

In this case, SGF first raised unenforceability as an
affirmative defense in its answer on May 27, 2008, over
seven months after the October 4, 2007 arbitral decision
was handed down.[3]   As in Local 802, the defendant has not
offered any explanation for why it was not in a position to
contest the arbitration award within the ninety day period
provided in CPLR § 7511(a).    Thus, under Local 802,
defendant's affirmative defenses are time-barred.[4]

## CONCLUSION

Because SGF failed to apply to stay the arbitration
within the 20 day period provided by CPLR 7503(c) and
because, under Local 802, SGF is precluded from asserting
unenforceability as an affirmative defense seven months
after the arbitration proceeding, SGF is estopped from
asserting fraud in the execution and economic duress as
affirmative defenses.   In the absence of any other argument
that the Arbitration Award should be vacated, plaintiffs'

---

[3] Indeed, in August 2005, over six months after defendant signed
the CBA, defendant permitted an audit of its records pursuant to the
CBA.   If defendant thought that the CBA was unenforceable, its behavior
in August 2005 did not appear to be consistent with that belief.

[4] While we are certainly sympathetic to defendant's situation, if
its allegations are true, mandatory precedent does not permit us to
ignore defendant's failure to timely assert its position as to the
validity of the CBA.

motion to confirm the Arbitration Award is granted. Plaintiffs should submit a judgment, on three days notice, forthwith.

**IT IS SO ORDERED.**

Dated:    New York, New York
          June 23, 2009

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Attorney for Plaintiff**
Andrew GraBois, Esq.
O'Dwyer and Bernstein
52 Duane Street, 5th Floor
New York, NY 10007

**Attorneys for Defendants**
Joseph Labuda, Esq.
Millman Labuda Law Group PLLC
300 Marcus Avenue
Lake Success, NY 11042

9